UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MIZAR,<br><br>       Plaintiff,<br><br>  v.<br><br>INDIGO SAN FRANCISCO, LLC,<br><br>       Defendant. | Case No.  22-cv-04033-JSC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 8 |

Plaintiff Robert Mizar brought this action against his former employer indiGO San Francisco,  LLC ("Defendant").  (Dkt. No. 1 at 23.)  Plaintiff alleges Defendant violated California's Fair Employment and Housing Act ("FEHA"), California's Unfair Competition Law ("UCL"), and the California Labor Code's overtime provisions.  (*Id.* at 26–31.)  Defendant moves to compel arbitration and stay the proceedings pending the outcome of that arbitration.  (Dkt. No. 8.)  Having carefully reviewed the parties' briefing, and having had the benefit of oral argument on September 15, 2022, the Court GRANTS Defendant's motion to compel arbitration.

## BACKGROUND

Plaintiff signed an agreement to arbitrate certain disputes related to his employment.  (Dkt. No. 8-2 at 10.)  On March 22, 2022, Plaintiff submitted his Arbitration Demand to JAMS.  (Dkt. No. 18-1 at 7.)  On March 29, 2022, the JAMS case manager emailed counsel for both parties introducing herself and explaining how to access the JAMS Access case management portal.  (*Id.* at 11.)  On April 8, 2022, Defendant emailed Plaintiff that the arbitration agreement did not require the parties to use JAMS as the arbitration service provider and that Defendant was happy to meet and confer on the selection of an arbitrator.  (*Id.* at 13.)  Defendant also informed JAMS that "[t]he parties are still meeting and conferring on whether JAMS is the appropriate arbitration

1    service provider. We will let you know when the issue is resolved." (Dkt. No. 8–6 at 6.)

2          The parties' arbitration agreement states: "Once the arbitration process has been initiated,

3    the Company and Employee shall mutually select a neutral arbitrator." (Dkt. No. 8-2 at 8–9.)  But

4    if "the parties cannot agree to an Arbitrator, either party may apply to a court of competent

5    jurisdiction with authority over the location where the arbitration will be conducted for

6    appointment of a neutral Arbitrator." (*Id.* at 9.)

7          Defendant indicated a preference to use a retired judge as an arbitrator. (Dkt. No. 18-1 at

8    13.) Plaintiff responded that because indiGO "previously flatly refused to use AAA," in a similar

9    matter, "we will use JAMS for this arbitration as well." (*Id.* at 15.)  Plaintiff then proposed a

10   retired judge to serve as arbitrator. (*Id.*) A week later, Defendant responded it would agree to

11   Plaintiff's chosen JAMS arbitrator, provided that the hearing would occur in-person. (*Id.* at 17.)

12   Plaintiff responded that the decision regarding the hearing protocol would be decided by the

13   arbitrator based on the conditions at the time of the hearing. (*Id.* at 19.)  Defendant responded

14   "Yes, let's agree to Judge Duryee contingent on Claimant not requesting a virtual hearing *and* not

15   objecting to an in-person hearing (i.e. taking no position one way or the other, including a

16   "preference"). Let me know if you would like to discuss." (*Id.* at 21.)  On April 26, 2022,

17   Plaintiff requested that Defendant "please put together what such a stipulation will look like in a

18   form that will be signed and we can consider/redline?" (*Id.* at 23.)

19         On April 29, 2022, JAMS uploaded two notices to the JAMS Access portal. (*Id.* at 25–35.)

20   First, JAMS noted that it had received Plaintiff's Arbitration Demand and that, upon review of that

21   demand, the "Minimum Standards of Procedural Fairness" applied. (*Id.*)  Second, JAMS advised

22   the parties had not paid the required filing fees ($150.00 from Plaintiff and $1,350.00 from

23   Defendant). (*Id.*)  Counsel for both parties appear on the distribution list for these system updates.

24   (*Id.* at 29, 35.)  JAMS also uploaded an invoice directed to Defendant's counsel. (*Id.* at 33.)

25         Plaintiff then communicated with JAMS regarding the arbitration.  JAMS asked Plaintiff if

26   the negotiation regarding Judge Duryee had resolved. (Dkt. No. 8-6 at 24.)  Plaintiff responded

27   that it "[l]ooks like we are going to go with her but working on a Stipulation to the terms." (*Id.* at

28   23.)  In early May, Plaintiff asked JAMS if Defendant had paid the arbitration fees. (*Id.* at 22.)

United States District Court
Northern District of California

1    JAMS responded, "I await receipt of the stip and payment from Respondent." (*Id.*)  Defendant was

2    not copied on any of these communications.

3          On May 20, 2022, Defendant sent Plaintiff the stipulation with instructions to redline any

4    changes.  (*Id.* at 13.)  On May 25, 2022, Plaintiff expressed further concerns regarding mandated

5    in-person proceedings and requested that Defendant agree to Judge Duyree without stipulations

6    about in person or virtual proceedings.  (*Id.* at 10.)  Defendant sent Plaintiff an email stating:

7    "Yeah, agree – let's get the arbitration rolling[.]" (*Id.*)

8          On June 1, 2022, Plaintiff asked JAMS if Defendant had paid its invoice.  (*Id.* at 27.)

9    JAMS responded that Defendant had not yet paid and copied Defendant's counsel.  (*Id.*)

10   Defendant's counsel states he was not aware JAMS had issued an invoice and had not received

11   any notification of the April 29, 2022, notices.  (*Id.* at 31.)

12         Plaintiff elected to withdraw from arbitration, pursuant to California Code of Civil

13   Procedure ("CCP") § 1281.97. (*Id.* at 37.)  Plaintiff then filed this suit in Marin County Superior

14   Court.  (Dkt. No. 1 at 22.)  Defendant paid the JAMS invoice on June 10, 2022. (Dkt. No. 8-6 at

15   30.)  JAMS paused administration of the matter based on Plaintiff's withdrawal.  (*Id.* at 45.)

16   Defendant removed Plaintiff's state court case to this Court and now moves to compel arbitration.

17   (Dkt. Nos. 1, 8.)

18                                          **DISCUSSION**

19         If "the making of the arbitration agreement or the failure, neglect, refusal to perform the

20   same" is at issue, the summary judgment standard applies.  *Hansen v. LMB Mortg. Servs., Inc.*, 1

21   F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4).  Defendant moves to compel arbitration

22   under the parties' arbitration agreement.  In response, Plaintiff contends Defendant breached the

23   arbitration agreement as a matter of California law and therefore cannot compel arbitration under

24   California or federal law.  Thus, because the dispute centers on Defendant's alleged "failure,

25   neglect, [or] refusal to perform" the terms of the arbitration agreement, the summary judgment

26   standard applies.  *Id.*  To prevail under the summary judgment standard, Defendant must show

27   there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a

28   matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

United States District Court
Northern District of California

The parties agree that the arbitration agreement makes this a question for the court, not the arbitrator. (Dkt. No. 8-2 at 8 ("the parties specifically agree that any disputes arising out of or relating to the interpretation, application, enforceability, revocability or validity of this Agreement or any portion thereof shall not be resolved by an arbitrator but instead by a court of law")). Because Defendant did not breach the agreement as a matter of law, Defendant's motion to compel arbitration is GRANTED.

## I. The Statutory Scheme

The parties dispute whether Defendant complied with CCP §§ 1281.97. Section 1281.97 places requirements on the arbitration agreement's "drafting party"—the company or business that included a pre-dispute arbitration provision in the contract. *See* CCP § 1280 (defining drafting party). Specifically, CCP § 1281.97(a)(1) provides that:

> In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2.

Section § 1281.97(a)(2) requires that

> After an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt.

If the drafting party fails to comply with § 1281.97(a), the employee may withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction. *Id.* § 1281.97(b)(1). Upon its breach, the drafting party is also obligated to pay the "reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." *Id.* § 1281.99(a).

4

United States District Court
Northern District of California

## II.    Application

Resolution of this motion turns on the "due date" of the fees or costs to initiate arbitration within the meaning of CCP § 1281.97(a)(1).  The arbitration agreement provides that the parties must mutually select an arbitrator after a party makes a written demand for arbitration.  It states:

> In order to *initiate* the arbitration process, the party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first-class mail to the other party within the applicable statute of limitations period.  Any demand for arbitration made to the Company shall be provided to the Founder and CEO of the Company. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.
>
> *Once the arbitration process has been initiated*, the Company and Employee shall mutually select a neutral arbitrator, who will be a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator.

(Dkt. No. 8-2 at 8–9) (emphasis added).  Thus, this arbitration agreement, unlike many, does not identify the entity that will conduct the arbitration; instead, it leaves it to the parties to agree to the arbitrator (and accompanying entity, if any) once a party makes a written demand for arbitration.  If they cannot agree, then any party may apply to a court to appoint a neutral arbitrator.  Thus, until an arbitrator is selected—either by the parties or a court—no arbitration fees or costs can be due.

Based on the record submitted, every reasonable trier of fact would find that the parties did not reach an agreement to use the JAMS arbitrator until May 25, 2022.  At common law, an acceptance that varies the terms of the offer is a counteroffer and operates as a rejection of the original offer.  *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443 (9th Cir. 1986).  Plaintiff and Defendant traded counteroffers regarding the arbitrator until May 25, 2022.  First, Plaintiff unilaterally selected a JAMS arbitrator.  Defendant countered that it would accept the JAMS arbitrator if Plaintiff accepted an in-person hearing.  Plaintiff never agreed to those terms.  Instead, Plaintiff urged Defendant to drop the in-person requirement and agree to the JAMS arbitrator.  Defendant did so on May 25, 2022; thus, that is the earliest any agreement to use the JAMS arbitrator was made and thus the earliest any fees to JAMS could have been due.  Because

1 Defendant paid the JAMS fees 15 days later, it paid the fees within 30 days of the due date and

2 thus did not breach the arbitration agreement within the meaning of CCP § 1281.97(a)(1).

3 Plaintiff's insistence that the April 2022 JAMS invoice started the 30-day clock for

4 Defendant to pay the JAMS fees is unpersuasive. For the reasons explained above, no reasonable

5 trier of fact could find that the parties agreed to use JAMS prior to May 25, 2022; thus, the JAMS

6 invoice was premature. [1] At oral argument, Plaintiff urged that the parties reached agreement on

7 April 26, 2022. But the email chain does not show that Plaintiff accepted Defendant's offer to

8 agree to the proposed arbitrator conditioned on Plaintiff's agreement to conduct in-person

9 proceedings. Instead, Plaintiff countered Defendant's offer with: "please put together what such a

10 stipulation will look like in a form that will be signed *and we can consider/redline*?" (Dkt. No.

11 18-1 at 23) (emphasis added). Plaintiff's response supports an inference that Plaintiff agreed to

12 consider Defendant's offer; it does not reasonably support an inference that Plaintiff accepted

13 Defendant's offer. Indeed, the agreement the parties finally reached was different.

14 Plaintiff also argues that while the parties had not agreed on an arbitrator, they had agreed

15 to use JAMS. But Plaintiff does not identify evidence that creates a genuine dispute that the

16 parties agreed to use JAMS and were merely negotiating *which* JAMS arbitrator. The undisputed

17 evidence is that no party accepted the other party's offer until Defendant accepted Plaintiff's most

18 recent offer on May 25, 2022.

19 The language of § 1281.97(a)(2) does not compel a different result. While it states that the

20 arbitration provider shall provide an invoice for fees and costs "[a]fter an employee or consumer

21 meets the filing requirements necessary to initiate arbitration," under the particular arbitration

22 agreement at issue here, no invoice could be validly issued until the parties agreed upon an

23 arbitrator. Similarly, while the arbitration agreement describes the arbitration process as being

24 initiated by a party demanding arbitration in writing, as a matter of common sense that cannot

25 mean that the written arbitration demand triggers the obligation of the arbitration provider to issue

---

[1] Because the Court finds that the parties did not reach an agreement until the May 25, 2022, correspondence, the Court need not address the parties' arguments regarding Defendant's notice of the premature April 29, 2022, invoice.

United States District Court
Northern District of California

an invoice under § 1281.97(a)(2).  Until the parties agree to an arbitration provider, there is no agreed-upon arbitration provider to issue an invoice that starts the 30-day clock. [2]

This is not to say a company could indefinitely refuse to select an arbitrator.  Extended refusal to agree to an arbitration provider could constitute an act "inconsistent with" the right to arbitrate, such that a party waives the right to compel arbitration. *Cf. Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) (finding that a litigant's refusal to pay the arbitration filing fee constituted an act inconsistent with the right to arbitrate).  But on these undisputed facts, the parties' two-month negotiation before accepting the JAMS arbitrator did not constitute an act by either party that was "inconsistent with the right to arbitrate." *See Gallo v. Wood Ranch USA, Inc.*, 81 Cal. App. 5th 621, 631 n.3 (2022) (finding that the "two months it took the parties to agree on an arbitrator" did not constitute an act inconsistent with the right to arbitrate).  In any event, the arbitration agreement provides that a party could go to court to seek appointment of an arbitrator and Plaintiff did not do so. (Dkt. No. 8-2 at 9.)

In sum, Defendant did not violate the arbitration agreement because it paid the JAMS invoice within 30 days of the earliest date the invoice could be due under CCP § 1281.97 and the arbitration agreement.  Because Defendant did not breach the arbitration agreement under CCP § 1281.97, the Court need not address Plaintiff's request for fees pursuant to CCP § 1281.99.

## CONCLUSION

Defendant's motion to compel arbitration and stay this matter pending resolution of arbitration is GRANTED.  The Case Management Conference scheduled for October 6, 2022, is VACATED.

This Order disposes of Docket No. 8.

**IT IS SO ORDERED.**

Dated: September 15, 2022

JACQUELINE SCOTT CORLEY
United States District Judge

---

[2] The parties' arbitration agreement was written before CCP Section 1281.97's January 1, 2020, effective date.  *Compare* CCP § 1281.97 (effective 2020) *with* (Dkt. No. 8-2 at 9 (effective 2019)).